# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA DIVISION

**LIBRUN JEAN-HENRIQUEZ,**

    Petitioner,

vs.                            Case No. 4:05cv304-MP/WCS

**IMMIGRATION &**
**NATURALIZATION SERVICE, et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

By court order entered on January 25, 2006, the parties were directed to file responses to several issues raised by the Court *sua sponte*. Doc. 58. The deadline for responding to that order was February 15, 2006. *Id.* After submitting a motion to expedite, doc. 59, and an emergency motion for a preliminary injunction and temporary restraining order, doc 60,[1] Petitioner filed a response on February 6, 2006. Doc. 62. Petitioner also filed another request to expedite these proceedings, doc. 64. Respondent has failed to respond to the Order.

---

[1] A report and recommendation was previously entered on those motions, doc. 61, and is currently pending before the assigned District Judge.

**Procedural Status**

This case was transferred to this Court from the Middle District of Florida on August 22, 2005. After the *pro se* Petitioner filed an amended petition for writ of habeas corpus , doc. 20, Respondent filed a motion to dismiss, doc. 50, asserting that this Court lacks jurisdiction over the § 2241 petition. Doc. 51. Petitioner filed a reply, doc. 56, with several exhibits to support his opposition to the motion to dismiss, doc. 57.

Petitioner has been held in Respondent's custody awaiting removal to France since April 8, 2005. Doc. 20. Petitioner contends that France refuses to issue travel documents and that Respondents "refuse to release him even though they are unable to deport him and will be unable to deport him in the reasonably foreseeable future." *Id.* Petitioner asserts that his continued detention violates his right to due process. *See* doc. 62, p. 3.

**Facts**

The relevant facts apparently are not disputed. Petitioner is a native and citizen of Haiti who entered the United States in October of 1984. Doc. 56. Petitioner was convicted of several crimes in the State of Florida in 1989, 1990, and 1992, some of which were vacated by a Florida court because his plea was involuntary. Doc. 50, p. 2. In December of 1998, the INS (now known as "ICE" - Immigration and Customs Enforcement) initiated what was then called deportation proceedings (now characterized as removal). Doc. 56, p. 4. Petitioner's removal proceedings were conducted pursuant to 8 U.S.C. § 1226(c)(1)(A) which relates to deportable criminal aliens. Doc. 20, p. 3. Plaintiff was ordered removed by an Immigration Judge to France, or in the alternative to Haiti or the Bahamas, and Petitioner's appeal to the

Board of Immigration Appeals (hereinafter "BIA") was dismissed on August 21, 2000. *Id.*; *see also* ex. 4; doc. 57, ex. 1, pp. 6, 14.[2] However, because Petitioner's convictions which were the basis for the order or removal were vacated, the BIA reopened Petitioner's case on or about October 11, 2005. Docs. 50, p. 3; doc. 56, p. 6; doc. 57, ex. 3, p. 3. The BIA determined that Petitioner's convictions which were vacated could "affect the validity of the present removal order." Doc. 57, ex. 3, p. 3. Thus, Petitioner's case was "remanded to the Bradenton Immigration Court for further proceedings . . . ." *Id.* A substituted charge of removal was filed on or about November 8, 2005, asserting Petitioner is an alien convicted of, or who admits committing, a "crime involving moral turpitude" and that Petitioner is an "alien present in the United States without being admitted or paroled . . . ." Doc. 57, ex. 2, p. 6.

  Petitioner's motion for release during the period that his case is being reviewed by the BIA was denied by the Immigration Judge. Doc. 50, p. 3; doc. 56, p. 6. The Immigration Judge concluded that Petitioner should be held in "mandatory custody." Doc. 57, ex. 3, p. 4.

  It was at that point in reviewing the petition that the prior court order was issued. Doc. 58. In light of the fact that the BIA was currently reviewing Petitioner's case, *see* doc. 56, p. 6, it was unclear whether Petitioner had a viable claim. The parties were *sua sponte* specifically directed to address two issues raised. The first issue was whether the petition was ripe for review and the second issue was whether the claim was controlled by <u>Demore v. Kim</u>, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Doc. 58.

---

  [2] The page numbers are the pages assigned by the electronic docket.

**Analysis**

^As noted above, Respondent has not filed any response to the court order. Petitioner has filed a response, but spends much of it restating what was already presented and arguing that the Immigration Judge has erred in considering his 2004 conviction a crime of moral turpitude and that it is not final for immigration purposes because it is still on appeal.  Doc. 62, p. 9.  Petitioner contends that because his conviction is not final until he has exhausted appellate review of his sate conviction, he is entitled to be released from custody.  *Id.*, at 10-11.  Petitioner also argues that the Immigration Judge failed to consider whether Petitioner was eligible for relief under the Haitian Refugee Immigrant Fairness Act of 1998 (HRIFA).  *Id.*, at 12-18.  Finally, Petitioner asserts that his continued confinement disrupts his family unity, precludes him from supporting his family, and creates a hardship for his family.  *Id.*, at 19-20.

These arguments by Petitioner, however, relate to the issue of whether or not Petitioner should be removed or is subject to removal proceedings.  Those claims cannot be considered by this Court.  As correctly noted by Respondent previously, any claims concerning the validity of an order of removal must be presented to the Court or Appeals.  Doc. 50, p. 3.  Since passage of the REAL ID Act of 2005, effective May 11, 2005, only the Court of Appeals has jurisdiction over such claims.[3]  The Act "eliminated habeas petitions challenging final orders of removal."  *Id.*, at 4, *citing* 8 U.S.C. § 1252(b)(9).  To the degree Petitioner so argues here, those claims may not be

---

[3] The REAL ID Act of 2005 amended the judicial review provisions of § 242 of the Immigration and Nationality Act making a petition for review in the federal courts of appeals the sole means of review of a final immigration "order of removal, deportation, or exclusion."  8 U.S.C. § 1252(a)(5).

Case No. 4:05cv304-MP/WCS

considered by this Court. Nevertheless, the REAL ID Act does not preclude a district court from considering a challenge to continued detention under Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Sisay v. Gonzales, 2005 WL 1541085, *1 (E.D.Cal. June 29, 2005); Ortega v. Gonzalez, 2005 WL 1523783, *1-2 (E.D.N.Y. June 28, 2005); Kanteh v. Ridge, 2005 WL 1719217, *3 (D.Minn. June 30, 2005); Harrison v. Hogan, 2005 WL 2020711, *1, n.2 (M.D.Pa. July 18, 2005); Campbell v. Chertoff, 2005 WL 2989711, *3 (E.D.Pa. July 29, 2005); Washington v. District Director, I.N.S., 2005 WL 2777314, *3 (S.D.N.Y. Aug. 26, 2005); Maiwand v. Ashcroft, 2005 WL 2340466, *3 (E.D.N.Y. Sept. 26, 2005).

Respondent also previously argued that because the BIA was currently reviewing Petitioner's case, "this Court no longer has jurisdiction over the case because there is no 'final order' upon which to seek habeas relief." Doc. 50, p. 3. Having a final order of removal is necessarily part of the exhaustion requirement in challenging the order of removal. However, there is no exhaustion requirement in a challenge to one's continued and indefinite detention. Arango Marquez v. I.N.S., 346 F.3d 892, 896-897 (9th Cir. 2003).

As the parties have failed to address the two concerns raised by the undersigned *sua sponte*, this report and recommendation is entered based on the record evidence submitted previously along with the exhibits recently submitted by Petitioner with his response. Doc. 62.

Petitioner's most recent exhibit, doc. 62, ex. B, demonstrates that the BIA has reopened his case. Ex. B. The proceedings were remanded to the Bradenton Immigration Court for further proceedings on or about October 11, 2005. *Id.* Petitioner

continues to be held in mandatory custody. Doc. 62, ex. C. A substituted charge of removal was entered on November 8, 2005, stating that Petitioner is subject to removal pursuant to § 212(a)(2)(A)(i)(I), and § 212(a)(6)(A)(i) of the Immigration and Nationality Act. Doc. 62, ex. D. The substitute charge states that Petitioner was convicted of Grand Theft on October 29, 2004. Id. At this point there is no evidence that a final order of removal has been entered and Petitioner is still in removal proceedings.

In Campbell v. Chertoff, No. Civ. A. 05-2041, 2005 WL 2989711 (E.D. Pa. 2005), the court considered a Zadvydas claim that the petitioner should be released while he was appealing the BIA's decision to remove him from the United States. Id., at *2. The court held that the § 2241 petition was not ripe for review because the presumptive period of removal had "not yet begun, much less expired." 2005 WL 2989711, at *3. Thus, the court held that Zadvydas was inapplicable because the petitioner's removal period had not commenced.[4] Id.

Under § 1231, the Government must effectuate removal within ninety days "after an order of removal is issued." 8 U.S.C. § 1231(a)(1)(A). During that ninety-day "removal period," aliens must be detained.[5] 8 U.S.C. § 1231(a)(2); (a)(1)(A). If the alien

---

[4] The petitioner in Campbell had received a final order of removal from the BIA on April 27, 2004. 2005 WL 2989711, at *1. Petitioner's § 2241 petition was dismissed but the Third Circuit Court of Appeals granted petitioner a stay of deportation pending resolution of his appeal. Id., at *2. The appeal was pending at the time of the decision on petitioner's § 2241 petition challenging his detention. Id. Furthermore, there was evidence in that case that ICE would review petitioner's custody status "upon the dismissal of the stay of removal issued by te Court of Appeals or upon the passage of one year since the stay was entered, whichever [was] sooner." Id.

[5] The beginning of the removal period is defined as the latest of the following:

(1) The date the order of removal becomes administratively final.

"cannot be removed within the 90-day removal period, the alien may be granted supervised release or may be further detained, subject to administrative review." Kothandaraghipathy v. Dep't of Homeland Sec., 396 F.Supp.2d 1104, 1106 (D. Ariz. 2005), *citing* 8 U.S.C. § 1231(a)(3). Accordingly, it is only when an alien is held *beyond* the removal period that he has a potential claim under Zadvydas. Campbell v. Chertoff, 2005 WL 2989711 at *4.[6] Thus, because Petitioner here does not have an order of removal, the 90-day removal period has not yet begun. Petitioner's claim under Zadvydas is not ripe and must be dismissed.

As for any claim that should be inferred in this case that Petitioner has been unlawfully confined in Respondent's custody since May 6, 2005, *without* a final order of removal, such a claim must fail.[7] The Supreme Court concluded in Demore v. Kim, 538

---

> (2) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (3) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "In other words, for aliens who are not serving criminal sentences, the 'removal period' begins on the later of either the date on which the order of removal becomes administratively final, or the date of the final order of a reviewing court." Ulysse v. Dep't of Homeland Sec., 291 F.Supp.2d 1318, 1324 (M.D. Fla. 2003). For a criminal alien, the date appears to be the date he is released from his incarceration and is transferred to the custody of ICE. 8 U.S.C. § 1231(a)(1)(B)(3).

[6] Zadvydas held that when an alien has been ordered removed, has been held for more than six months (a presumptively reasonable period for effecting removal), and for whom it appears that removal is "no longer reasonably foreseeable, continued detention is no longer authorized by the statute." Zadvydas, 533 U.S. at 699.

[7] "Freedom from imprisonment--from government custody, detention, or other forms of physical restraint--lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Zadvydas, 533 U.S. at 690, 121 S.Ct. 2491; *quoted in* Oyedeji v. Ashcroft, 332 F.Supp.2d 747, 753 (M.D.Pa. Aug. 24, 2004) (granting habeas petition of alien who had been detained for more than four years).

Case No. 4:05cv304-MP/WCS

U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), that Congress could appropriately mandate detention during removal proceedings (and, implicitly, prior to an order of removal) for criminal aliens.  The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  Demore, 538 U.S. at 531, 123 S.Ct. 1721-1722.  The Court noted that detention in that circumstance "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  538 U.S. at 528, 123 S.Ct. at 1720.  The Court distinguished Zadvydas by noting, *inter alia*, that detention pending a determination of removal has an "obvious termination point" unlike the indefinite period for aliens held in post-removal detention. *Id.*, at 529, 123 S.Ct. at 1720.  The Court also noted that in the vast majority of criminal alien detention cases, the removal proceedings are completed within a brief period of time and while still incarcerated by the criminal justice system. *Id.*, at 529-531, 123 S.Ct. at 1721; *see also* Khotesouvan v. Morones, 386 F.3d 1298, 1300-1301 (9th Cir. 2004), *cert. denied* Khotesouvan v. Clark, 125 S.Ct. 2975 (2005). Petitioner's due process claim is foreclosed by Demore v. Kim.

In sum, Petitioner's *current* detention is lawful under Demore v. Kim, *supra*. Petitioner also cannot state a claim under Zadvydas because the removal period has neither expired nor begun.  To the degree Petitioner seeks to raise arguments concerning the criminal convictions which form the basis for Respondent's efforts to remove him, this Court does not have jurisdiction to consider such a claim.  Indeed, at this point, any arguments would be premature as a final order of removal has not been

entered.  Accordingly, the § 2241 petition must be dismissed, doc. 20, and the recently filed motion to expedite, doc. 64, be denied.

In light of the foregoing, it is respectfully **RECOMMENDED** that Petitioner's amended § 2241 petition for writ of habeas corpus, doc. 20, be **DISMISSED without prejudice** as Petitioner's claims under Zadvydas v. Davis, 533 U.S. 678 (2001) are not ripe for review, and Petitioner's motion to expedite, doc. 64, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 20, 2006.

    s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**